IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECCA BOWMAN
o/b/o A.K.P., a minor                                                    PLAINTIFF

               v.                    Civil No. 10-2083

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                          DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Rebecca Bowman, brings this action on behalf of her son, A.K.P.[1], seeking judicial

review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his application for child supplemental security income

("SSI") benefits under Title XVI of the Social Security Act (the "Act").

**Procedural Background:**

Plaintiff protectively filed an application for child's SSI on July 21, 2006, alleging a

disability onset date of July 29, 2003, due to attention-deficit hyperactivity disorder ("ADHD")[2],

psychotic disorder, bipolar disorder, and a heart murmur.  Tr. 54, 59, 77-80, 91, 95.  At the time of

filing, Plaintiff was six years old, a school-age child under the Act.  Tr. 44.

Plaintiff's claim was denied initially and on reconsideration.  Tr. 54-56, 59-62.  An

administrative hearing was held on October 10, 2007. Tr. 15-35.  Plaintiff was present at the hearing

---

[1] To avoid confusion, A.K.P. will be referred to in this opinion as "Plaintiff."

[2] ADHD is characterized by a "persistent pattern of inattention and/or hyperactivity/impulsivity that is more frequently displayed and more severe than is typically observed in individuals at a comparable level of development."  AM. PSYCHIATRIC ASS'N. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 85 (4th ed., 2000).

-1-

and represented by council. Tr. 15-35.  The Administrative Law Judge ("ALJ"), in a written decision dated March 24, 2008, found that: (1) Plaintiff, as an older infant, had not engaged in substantial gainful activity during the relevant time period; (2) Plaintiff suffers from attention deficit disorder and disruptive behavior disorder, not otherwise specified, both of which constitute severe impairments; (3) although Plaintiff's impairments are severe, they do not meet or medically equal a listed impairment; and (4) Plaintiff does not have extreme or marked limitations in any domain of functioning, and as such, does not have an impairment(s) that functionally equals a listing.  Tr. 38-53.  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 38-53.

On April 23, 2010, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  Plaintiff now seeks judicial review of that decision.

**Factual Background:**

Plaintiff was treated by Kenneth W. Foster, M.D., for ADHD, depression, and mood swings. Tr.162-174.  In January 2005, Dr. Foster noted that Plaintiff's depression, psychotic features, and anxiety/panic were in total remission and his post-traumatic stress disorder ("PTSD") had improved and was in partial remission.  Tr. 174.  However, he noted that Plaintiff continued to act out at home and throw temper tantrums, although his temper tantrums were less intense and shorter in duration. Tr. 174.  In April 2005, Plaintiff was treated with Risperdal, Abilify, Zoloft, Strattera, and Tenex. Tr. 171.  In September 2005, Plaintiff was switched from Zoloft to Lexapro for depression.  Tr. 167. In December 2005, Dr. Foster noted that Plaintiff's psychotic features, depression/mania, and anxiety/panic/rage were all in remission, and his PTSD was in partial remission.  Tr. 166.  At this

-2-

time, he was prescribed Equetro and his other medications were refilled. Tr. 166. Dr. Foster further noted that Plaintiff's behavior was appropriate, cooperative, and compliant. Tr. 166. In January 2006, Plaintiff's mother reported improving therapeutic benefit from his medication regimen and noted that he was less agitated and was acting out less. Tr. 164. In February 2006, Plaintiff's mother reported continued improved behavior both at home and at school. Tr. 163. By July 2006, Dr. Foster noted that Plaintiff had made average progress toward his goals. Tr. 162.

Plaintiff was treated at Cooper Clinic for routine check-ups, ear infections, and a heart murmur. Tr. 218-222. Notes from January 2006 reveal that Joel Parker, M.D., ordered an echocardiogram, but there are no records that indicate the test was actually performed. Tr. 222. After a routine examination in August 2006, Merle E. McClain, M.D., determined Plaintiff was a "well child" dealing with obesity. Tr. 218-219.

In March 2006, Plaintiff was referred at Perspectives Behavioral Health Management ("Perspectives") by his school counselor. Tr. 176-217. At his intake assessment, Plaintiff's mother reported that he suffered from irritability, insomnia, hypersomnia, impaired energy, excessive energy, impaired concentration/inattention, hyperactivity, lack of cooperation, oppositional behaviors, explosive anger to minor problems, and occasional stealing. Tr. 180-189. His medications included Risperdal, Tenex, Strattera, Lexapro, and Equetro. Tr. 183. School personnel reported a chaotic home environment with a lack of structure and consistent discipline. Tr. 180. Plaintiff's kindergarten teacher stated she had not observed symptoms of ADHD or defiant behaviors as described by Plaintiff's mother, and noted that Plaintiff functioned well in the classroom and was not a significant disciplinary problem. Tr. 180. She further stated that Plaintiff was an average

-3-

student who appeared to enjoy school, but he was very sleepy at school and was often difficult to rouse from sleep.  Tr. 180.

On examination, Plaintiff was cooperative, friendly, and euthymic, but he was irritable with his mother when she attempted to set boundaries.  Tr. 198.  His associations were logical and thought content was appropriate.  Tr. 198.  His insight and judgment were average.  Tr. 198.  Amanda Boeke, Psy.D., noted that Plaintiff appeared tired and frequently yawned and fell asleep during the examination.  Tr. 198.  Plaintiff was diagnosed with adjustment disorder with mixed disturbance of conduct and emotions and ADHD (by history).  Tr. 183, 200.  He was given a Global Assessment of Functioning ("GAF") score of 58, indicating moderate difficulty in social, occupational, or school function.  Tr. 183, 201-202.  The examiner noted that Plaintiff appeared overmedicated and fatigued. Tr. 197.

In June 2006, Plaintiff's mother reported that he was much more alert since Lexapro and Strattera had been discontinued, and his teachers were pleased.  Tr. 179.  However, she still observed hyperactivity, lack of concentration, and constant fidgeting.  Tr. 179.  Plaintiff's mental status examination was within normal limits.  Tr. 179.  B. Ellington, M.D., diagnosed Plaintiff with ADHD and mood disorder, and gave him a GAF score of 48.  Tr. 179.  In August 2006, Plaintiff was discharged from treatment because he was attending another school in the fall.  Tr. 176-177.

On September 18, 2006, Plaintiff's kindergarten teacher, Meghan Estep, completed a Teacher Questionnaire.  Tr. 223-230.  Ms. Estep reported no problems in the domains of acquiring and using information, interacting and relating with others, and moving about and manipulating objects.  Tr. 223-230.  In the domain of attending and completing tasks, Ms. Estep noted a slight problem focusing long enough to finish assigned activities and an obvious problem paying attention when

-4-

spoken to directly.  Tr. 225.  She explained that Plaintiff was "medicated heavily, which caused him to sleep during class time."  Tr. 225.  In the domain of caring for himself, Ms. Estep noted a slight problem with taking care of personal hygiene, but no other problems.  Tr. 228.  In the domain of health and physical well-being, Ms. Estep noted that Plaintiff did not sleep when he was not medicated.  Tr. 229.  She stated Plaintiff was cooperative and worked hard.  Tr. 230.

In September 2006, Dana McGuire and Megan Estep, Plaintiff's first grade and kindergarten teachers, jointly completed a Teacher Questionnaire.  Tr. 239-247.  At the time, Ms. McGuire had been teaching Plaintiff for three weeks.  Tr. 239.  Ms. McGuire found no limitation in the domains of moving about and manipulating objects and health and physical well-being.  Tr. 244-246.  In the domain of acquiring and using information, Ms. McGuire found a slight problem understanding school and content vocabulary, reading and/or comprehending written material, providing organized oral explanations and adequate descriptions, expressing ideas in written form, recalling and applying previously learned material, and applying problem solving skills in class discussions.  Tr. 241.  In the domain of attending and completing tasks, Ms. McGuire noted an obvious problem carrying out multi-step instructions and a slight problem paying attention when spoken to directly, sustaining attention during play/sports activities, focusing long enough to finish assigned activities, refocusing to tasks when necessary, organizing personal things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, working without distracting self or others, and working at a reasonable pace/finishing on time.  Tr. 242.  In the domain of interacting and relating with others, Ms. McGuire found a slight problem playing cooperatively with children, making and keeping friends, seeking attention appropriately, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and

-5-

appropriate topics of conversation, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. Tr. 243. However, she also noted that it had not been necessary to implement behavioral modification strategies for Plaintiff, and his speech was clear and intelligible. Tr. 243-244. In the domain of caring for himself, Ms. McGuire noted an obvious problem being patient when necessary and a slight problem handling frustration appropriately, taking care of personal hygiene, caring for physical needs, cooperation in or being responsible for taking needed medications, using good judgment regarding personal safety and dangerous circumstances, responding appropriately to changes in own mood, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. Tr. 245. Ms. McGuire found no serious or very serious problems in any domain of functioning. Tr. 239-247.

On September 20, 2006, Stephen A. Whaley, M.D., completed a Childhood Disability Evaluation Form, in which he found that Plaintiff suffered from ADHD and mood disorder, which were severe impairments, but did not meet, medically equal, or functionally equal a Listing. Tr. 233-238. In his functional equivalence determination, Dr. Whaley found no limitation in the domains of acquiring and using information, moving about and manipulating objects, caring for yourself, and health and physical well-being. Tr. 235-236. He found less than marked limitation in the domains of attending and completing tasks and interacting and relating with others. Tr. 235. Dr. Whaley noted slight attention and behavioral problems and a problem doing multi-step activities, but no serious problems. Tr. 235. On February 9, 2007, Susan Manley, M.D., completed an evaluation that mirrored these findings. Tr. 263-268.

In October 2006, Dr. Foster placed Plaintiff back on Lexapro and increased his dosage of Risperdal and Strattera. Tr. 257-260. In November 2006, Dr. Foster found that Plaintiff's psychotic

-6-

features and depression/mania were in remission and his anxiety/panic/rage and PTSD were in partial to full remission. Tr. 258. He also noted that Plaintiff's school behavior had improved and he was acting out less. Tr. 258. He found that Plaintiff was not gravely disabled and had made average progress toward goals. Tr. 259. In January 2007, Dr. Foster noted that Plaintiff still acted out at home, but these incidents were less intense and shorter in duration. Tr. 260.

On October 30, 2006, Dr. Foster completed a Psychiatrist-Psychologist Domain Performance Assessment. Tr. 248-252. In the domain of acquiring and using information, Dr. Foster found three extreme limitations and four marked limitations. Tr. 248. In the domain of attending and completing tasks, he found six extreme limitations and four marked limitations. Tr. 249. In the domain of interacting and relating with others, Dr. Foster found four extreme limitations, eight marked limitations, and two moderate limitations. Tr. 250. In the domain of moving about and manipulating objects, he found two marked limitations and two slight limitations. Tr. 251. In the domain of caring for self, he found one extreme limitation, six marked limitations, one moderate limitation, and two slight limitations. Tr. 251-252.

In February 2007, when was six years old, he underwent evaluation at Carnall Elementary. Tr. 272-300. At the time, he was receiving Reading Recovery services. Tr. 286. It was noted that Plaintiff had been diagnosed with ADHD, but his diagnosis had not adversely affected his educational performance. Tr. 276. His measured intelligence and adaptive behavior skills were within the average range. Tr. 273, 285. On the Wechsler Intelligence Scale for Children-IV, Plaintiff received a full-scale IQ score of 96. Tr. 285. In listening comprehension, Plaintiff scored at a 6 year 4 month level. Tr. 273. In oral expression, he scored at a 5 year 9 month level. Tr. 273. Reading skills were at a 1.0 grade level, written expression scores were at a 1.5 grade level, and math scores

AO72A
(Rev. 8/82)

ranged from a K5 to a K8 grade level.  Tr. 273.  Performance on visual perception and visual

integration skills was very low, while auditory word discrimination skills were equivalent to those

of a child of 7 years 6 months.  Tr. 273.  Sandy Sanders, the school psychology specialist, did not

believe Plaintiff's test results were consistent with a disability.  Tr. 273.  Based on these scores,

Plaintiff was not recommended for special education services.  Tr. 274.  However, a 504 plan[3] was

developed to assist Plaintiff in the general classroom.  Tr. 275-278.

In March 2007, Plaintiff took the Iowa Test of Basic Skills ("ITBS"), which tests a child's

reading, language, and math skills.  Tr. 270.  In April 2007, Dr. Foster wrote a letter to Plaintiff's

school, in which he indicated that Plaintiff suffered from bipolar I disorder, mixed, severe with

psychotic features, disruptive behavior disorder not otherwise specified, reactive attachment disorder,

infancy, and ADHD, combined type.  Tr. 280.  He also noted that Plaintiff's medications included

Risperdal, Equetro, Lexapro, Strattera, and Tenex, and he had improved with therapeutic benefit

from these medications.  Tr. 280-282.  Dr. Foster also included a psychological evaluation he

performed when Plaintiff was three years old.  Tr. 283-284.

In July 2007, Plaintiff underwent psychological testing before the second grade.  Tr. 301-304.

Upon examination, Plaintiff was alert, followed directions, and responded well to encouragement.

Tr. 301.  On the Wechsler Intelligence Scale for Children-IV, Plaintiff received a full-scale score of

80, indicating intelligence in the low average range.  Tr. 301.  Plaintiff's parents completed the

Gilliam Autism Rating Scale-2, which showed a likelihood of autism.  Tr. 302.  Daniel J. Johnson,

Ph.D., noted that Plaintiff showed a pattern of impaired cognitive functioning that often characterizes

---

[3] A 504 plan falls under Section 504 of the Rehabilitation Act of 1973, and is implemented when a child does not qualify for special education services but needs specialized accommodations to succeed in the classroom. Tr. 25-26.

persons with schizophrenia-spectrum disorders, but also noted the possibility of severe personality disorder, schizoaffective disorder, or bipolar disorder, as Plaintiff had difficulty managing his emotions in a comfortable and appropriate manner.  Tr. 302.  Dr. Johnson also found that Plaintiff showed evidence of either major depressive disorder or a chronic disposition to becoming depressed. Tr. 302.  However, he noted that Plaintiff appeared to have sufficient psychological resources to cope adequately with stressors in his life.  Tr. 302.  Specifically, Dr. Johnson noted:

> As a consequence, he can ordinarily manage the stresses in his life without becoming unduly upset by them and is likely to be relatively free from overt anxiety, tension, nervousness, and irritability.  Such people tend to be fairly stable individuals who possess at least an average capacity to tolerate frustration, persevere in the face of obstacles, and exert adaptive control over their behavior.

Tr. 302.  Additionally, Dr. Johnson found an adequate capacity to form identifications with people in his life, but noted that Plaintiff had a somewhat negative self-image which might affect his adaptive functioning.  Tr. 302.  He also found a limited capacity to form close attachments to other people.  Tr. 302.  Dr. Johnson diagnosed Plaintiff with ADHD, predominately hyperactive type, bipolar disorder not otherwise specified (by history), disruptive behavior disorder not otherwise specified, and rule out pervasive developmental disorder.  Tr. 304.

On August 14, 2007, Plaintiff underwent a developmental visual evaluation with Wanda Vaughn, M.D. Tr. 313-314.  Dr. Vaughn found that Plaintiff's visual skills were below average and could impact his academic performance.  Tr. 313.  She diagnosed Plaintiff with exophoria, oculomotor dysfunction saccades, headaches, and accommodative dysfunction.  Tr. 313.  Based on these findings, Dr. Vaughn recommended that Plaintiff begin optometric vision therapy.  Tr. 313.

On August 24, 2007, Plaintiff underwent occupational therapy testing with Patricia Marquis, an occupational therapist.  Tr. 306-312.  Testing revealed age appropriate visual perception, slight

-9-

delays in motor coordination, and slight delays in handwriting with significant delays in number formation and copying uppercase letters.  Tr. 307.  Range of motion testing was within normal limited, with normal muscle tone, strength, and control.  Tr. 309.  Plaintiff demonstrated strong visual perception scores and slightly weaker motor coordination.  Tr. 309.  He scored extremely high definite difference scores (less than two standard deviations below the mean) on the sensory profile, but Ms. Marquis noted that these were not evident during the evaluation.  Tr. 307-309.  Based on test results, Ms. Marquis determined that Plaintiff qualified for occupational therapy services once per week to address handwriting skills, sensory processing, and sensory diet development.  Tr. 309.

**Applicable Law:**

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion."  *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be disabled under the Act, a child must prove that he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations," and

-10-

which has lasted or can be expected to last for at least twelve months.  42 U.S.C. § 1382c(a)(3)(C)(i);

20 C.F.R. § 416.906.  In determining whether a claimant under the age of eighteen is disabled, the

ALJ undertakes a sequential three-step evaluation.  *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718

(8th Cir. 2005); 20 C.F.R. § 416.924(a).  The ALJ first determines whether the child is engaged in

substantial gainful activity.  20 C.F.R. § 416.924(b).  If the child is so engaged, he will not be

awarded SSI benefits.  *Id.*  At the second step, the ALJ determines whether the child has an

impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c).  To be deemed

severe, an impairment must be more than "a slight abnormality . . . that causes no more than minimal

functional limitations."  *Id.*  At the final step, the ALJ determines whether the child has an

impairment or impairments that meet, medically equal, or functionally equal a listed impairment.

20 C.F.R. § 416.924(d).

　　　The claimant has the burden of showing that his impairment meets or equals a listing.

*Jackson v. Astrue*, 314 Fed. Appx. 894, 895 (8th Cir. 2008) (citing *Johnson v. Barnhart*, 390 F.3d

1067, 1070 (8th Cir. 2004)).  To meet a listing, an impairment must meet all the specified criteria.

*Id.*  A child's impairment medically equals a listed impairment if it "is at least equal in severity and

duration to the medical criteria of the listed impairment."  20 C.F.R.  § 416.926(a); *Neal ex rel.

Walker v. Barnhart*, 405 F.3d 685, 689 (8th Cir. 2005).  Even if a child's impairments do not meet

a listing, he will be awarded benefits if his impairments "functionally" equal a listed impairment.

20 C.F.R. § 416.926a(a).  To determine whether an impairment functionally equals a disability

included in the Listings, the ALJ must assess the child's developmental capacity in six specified

domains.  20 C.F.R. § 416.926a(b)(1).  The six domains are:  (1) acquiring and using information;

(2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and

manipulating objects; (5) caring for yourself; and, (6) health and physical well-being.  20 C.F.R. §

416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

To functionally equal a listing, an impairment must result in "marked" limitations in two domains

of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).

     A marked limitation is an impairment that seriously interferes with the child's ability to

independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).  It is "more than

moderate" but "less than extreme."  *Id.*  An extreme limitation is defined as "more than marked," and

exists when a child's impairment(s) interferes very seriously with his ability to independently initiate,

sustain or complete activities.  20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be very

seriously limited when an impairment(s) limits only one activity or when the interactive and

cumulative effects of the impairment(s) limit several activities.  *Id.*

     In determining the degree of limitation in each of the six domains, the ALJ is required

to analyze the child's subjective complaints in accordance with the seven factors from 20 C.F.R. §

416.929(c).  Specifically, the ALJ must consider these factors: (1) the child's daily activities; (2) the

location, duration, frequency, and intensity of the child's pain or other symptoms; (3) the

precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of the child's

medication; (5) treatment, other than medication, that the child receives or has received for relief of

pain or other symptoms; (6) any measures the child uses or has used to relieve his or her pain or other

symptoms; and (7) other factors concerning the child's functional limitations or restrictions due to

pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3); *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.

1984.  The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges

-12-

and examines those factors prior to discounting the subjective complaints regarding the child's functional limitations. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).

**Discussion:**

Plaintiff contends the Commissioner's decision is not supported by substantial evidence. Specifically, Plaintiff raises the following issues: (1) whether the ALJ properly determined that his impairments did not functionally equal a listed impairment; and (2) whether the ALJ gave proper weight to the opinion of his treating physician. *See* Pl.'s Br. 4-18.

**I. Functional Equivalency**

Plaintiff argues that his impairments functionally equal a listing. *See* Pl.'s Br. at 4-16. The ALJ concluded that Plaintiff's impairments did  not functionally equal a listed impairment, as he found no limitation in the domains of acquiring and using information, moving about and manipulating objects, caring for one's self, and health and physical well-being, and less than marked limitation in the domains of attending and completing tasks and interacting and relating with others. Tr. 47-52.  In evaluating Plaintiff's limitations in each of the six domains, the ALJ considered the claimant's symptoms in accordance with 20 C.F.R. § 416.929(c), ultimately concluding that although Plaintiff suffered from medically determinable impairments that could reasonably be expected to produce the alleged symptoms, the statements made concerning the intensity, persistence and limiting effects of the claimant's symptoms were not entirely credible.  Tr. 44-45.

A. Acquiring and Using Information

This domain considers how well a claimant acquires or learns information, and how well he uses the information learned.  20 C.F.R. § 416.926a(g).  Based on Plaintiff's IQ scores, teacher

evaluations, and the findings of Dr. Whaley and Dr. Johnson, the ALJ concluded that Plaintiff has no limitations in this domain.  Tr. 47-48.

The evidence of record reveals that Plaintiff had very slight, if any, difficulties in the domain of acquiring and using information.  Ms. Estep, who had the benefit of teaching and observing Plaintiff throughout kindergarten, found no problems in acquiring and using information.  Tr. 223-230.  In fact, she found that Plaintiff was an average student who enjoyed school and functioned well in the classroom.  Tr. 180.  She also noted that once Plaintiff's medications were adjusted, he no longer fell asleep in class from being heavily medicated.  Tr. 179, 225, 230.

Ms. McGuire, who taught Plaintiff in first grade, noted only slight problems in understanding school and content vocabulary, reading and/or comprehending written material, providing organized oral explanations and adequate descriptions, expressing ideas in written form, recalling and applying previously learned material, and applying problem solving skills in class discussions.  Tr. 241.  She found no serious or very serious problems in any domain of functioning.  Tr. 239-247.

Dr. Whaley and Dr. Manly, the agency physicians, found no limitations in acquiring and using information.  Tr. 235-236.  IQ testing revealed that Plaintiff was functioning within the low average range.  Tr. 301.  Dr. Ellington noted that Plaintiff had average cognitive abilities and was maintaining consistently average grades.  Tr. 192.  Furthermore, the school psychologist evaluated Plaintiff and determined he did not qualify for special education services.  Tr. 273-274.  Instead, a 504 plan was developed to assist him in the general classroom.  Tr. 275, 278.

-14-

Plaintiff repeatedly refers to his performance on the ITBS as evidence that he is disabled.[4] *See* Pl.'s Br. 4-18.  This court disagrees.  Although Plaintiff performed poorly on the ITBS, this test score represents only a snapshot in time and is not a clear indicator of overall functioning.  Moreover, Plaintiff was only in first grade at the time of testing and did not have extensive experience taking standardized tests.  As such, the ITBS is certainly relevant, but must be weighed in conjunction with the overall evidence of record.  In this instance, the record supports the ALJ's conclusion that Plaintiff has no limitation in the domain of acquiring and using information.

B.  Attending and Completing Tasks

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities.  20 C.F.R. 416.926a(h).  The ALJ found that Plaintiff has less than marked limitations in attending and completing tasks.  Tr. 48-49.  Specifically, he found that although Plaintiff has some difficulty in this domain, problems with sleepiness and overmedication improved over time.  Tr. 49.

Ms. Estep did not observe symptoms of ADHD and noted that Plaintiff functioned well in the kindergarten classroom.  Tr. 180.  She found only slight limitations in Plaintiff's ability to focus long enough to finish assigned activities and an obvious problem paying attention when spoken to directly.  Tr. 225.  Plaintiff's first grade teacher found an obvious problem carrying out multi-step instructions, but otherwise only found slight limitations in this domain.  Tr. 242.  Neither teacher

---

[4] Despite Plaintiff's heavy emphasis on these test scores and his complaint that the entire profile was not available in the transcript, he did not attempt to supplement the transcript and provide the court with the documentation he found so conclusive.

-15-

found any serious or very serious limitations.  Moreover, school personnel noted that ADHD had not adversely affected Plaintiff's educational performance.  Tr. 276.

Dr. Whaley noted slight attention and behavioral problems and a problem doing multi-step activities, but he found no serious limitations.  Tr. 235.  Dr. Ellington found that Plaintiff was more alert since his medications were adjusted.  Tr. 179.  Plaintiff's mental status examination was within normal limits.  Tr. 179.  Dr. Johnson noted that Plaintiff was alert, followed directions, was not distractible, and responded well to encouragement.  Tr. 301.  For these reasons, the court concludes that substantial evidence supports the ALJ's determination that Plaintiff has less than marked limitations in this domain of functioning.

C.  Interacting and Relating with Others

In assessing a claimant's limitations in the domain of interacting and relating with others, the ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. § 416.926a(i); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 654 (8th Cir. 2004).  The ALJ found that Plaintiff has less than marked limitations in interacting and relating with others.  Tr. 49-50.

Ms. Estep reported that Plaintiff had no problems interacting and relating with others and was cooperative in the classroom.  Tr. 223-230.  Ms. McGuire found slight problems in this domain, but found it unnecessary to implement behavioral modification strategies.  Tr. 243-244.  Additionally, she noted that Plaintiff's speech was clear and intelligible.  Tr. 243-244.  In a school evaluation, Plaintiff's strengths were identified as his personality and his ability to interact appropriately with

-16-

peers. Tr. 197. Furthermore, there are no records of Plaintiff ever being disciplined at school for failing to get along with others.

Despite Dr. Foster's restrictive domain findings, he consistently noted that Plaintiff's school behavior had improved and he was acting out less. Tr. 258. He also found that behavioral incidents at home had become less intense and shorter in duration. Tr. 260. Dr. Johnson determined Plaintiff had an adequate capacity to form identifications with people in his life, but found a limited capacity to form close attachments to others. Tr. 302. However, he found that Plaintiff appeared to have sufficient psychological resources to cope adequately with the stressors in his life. Tr. 302.

The court finds that the observations of Plaintiff's teachers, who had the ability to observe his behavior on a daily basis, in addition to the comments from Dr. Foster, Dr. Whaley, Dr. Manley, and Dr. Johnson, provide highly persuasive evidence of overall improvement in this area of functioning. For these reasons, the court finds that substantial evidence supports the ALJ's determination that Plaintiff has less than marked limitations in the domain of interacting and relating with others.

D.  <u>Moving About and Manipulating Objects</u>

This domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. 20 C.F.R. § 416.926a(j). The ALJ found that Plaintiff has no limitations in moving about and manipulating objects. Tr. 50-51. Neither Ms. Estep or Ms. McGuire found any limitations in this domain. Tr. 223-230, 244-246. Moreover, neither agency physician found any limitations in moving about and manipulating objects. Tr. 235-236, 263-268. In a routine examination, Dr. McClain found that Plaintiff was a "well child" dealing only with obesity. Tr. 218-219.

-17-

Ms. Marquis, an occupational therapist, found slight delays in motor coordination and handwriting, with significant delays in number formation and copying uppercase letters. Tr. 307. However, she noted that range of motion testing was within normal limits, with normal muscle tone, strength, and control. Tr. 309. Plaintiff demonstrated strong perception scores and slightly weaker motor coordination. Tr. 309. Based on test results, Ms. Marquis recommended that Plaintiff undergo occupational therapy services once per week for 45 minutes. Tr. 309. Although Ms. Marquis found some slight limitations in motor coordination and handwriting, the relative infrequency of treatment is suggestive of the overall amount of limitation in this area.

After reviewing evidence from Plaintiff's teachers, physicians, and school personnel, the court finds that substantial evidence supports the ALJ's determination that Plaintiff has no limitations in this domain.

E.  <u>Caring for Yourself</u>

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways, how well the child copes with stress and changes in the environment, and whether the child takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The ALJ found that Plaintiff has no limitation in this domain of functioning. Tr. 51-52.

Plaintiff's kindergarten teacher found only a slight problem taking care of personal hygiene, but noted no other difficulties. Tr. 228. Plaintiff's first grade teacher found an obvious problem being patient when necessary, but otherwise noted only slight difficulties handling frustration appropriately, taking care of personal hygiene, caring for personal needs, cooperation in or being responsible for taking medications, using good judgment regarding safety and dangerous

-18-

circumstances, responding appropriately to changes in own mood, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. Tr. 245.

Dr. Whaley and Dr. Manley found no limitations in this domain of functioning. Tr. 235-236, 263-268. Additionally, Dr. McClain found that Plaintiff was a "well child" who only had difficulty with obesity. Tr. 218-219. School testing revealed that Plaintiff's adaptive behavior skills were within the average range. Tr. 273. Finally, Dr. Johnson found that Plaintiff could "ordinarily manage the stresses in his life without becoming unduly upset by them and is likely to be relatively free from overt anxiety, tension, nervousness, and irritability." Tr. 302. For these reasons, the court concludes that substantial evidence supports the ALJ's determination that Plaintiff has no limitations with regard to caring for himself.

F.  <u>Health and Physical Well-Being</u>

This domain considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects. 20 C.F.R. 416.929a(l). The ALJ found that Plaintiff has no limitation in the domain of health and physical well-being. Tr. 52. To support his conclusion, the ALJ noted that Plaintiff previously slept in class due to his medication regime, but improved once his medications were adjusted. Tr. 52.

After reviewing the transcript, the court finds that substantial evidence supports the ALJ's determination that Plaintiff has no limitation in the domain of health and well-being. First, Plaintiff's physician, Dr. McClain, determined he was a six year old well child. Tr. 218-219. Furthermore, Ms. Estep noted that once Plaintiff's medication was adjusted, he no longer slept in class. Tr. 229-230. She stated that Plaintiff was cooperative and worked hard. Tr. 230. Ms.

-19-

McGuire found no limitations in this domain.  Tr. 244-246.  Additionally, despite Dr. Foster's restrictive domain assessment, he repeatedly noted that Plaintiff's mental impairments were in partial or full remission and his behavior had improved with medication.  Tr. 163-164, 258-260.  Finally, both agency physicians found no limitation in the domain of health and physical well-being.  Tr. 235-236, 263-268.

Although Plaintiff was diagnosed with some optical impairments and slight delays in motor functioning, Dr. Vaughn recommended vision therapy and Ms. Marquis recommended occupational therapy to improve Plaintiff's functioning.  Tr. 306-314.  Moreover, there was no indication that these impairments significantly impaired Plaintiff's overall functioning.  For these reasons, the court concludes that the ALJ properly determined that Plaintiff has no limitation in this area of functioning.

## II. Treating Physician's Opinion

Plaintiff contends the ALJ failed to give proper weight to Dr. Foster's opinion.  *See* Pl.'s Br. 16-18.  A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record.  *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013).  In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).

-20-

The ALJ gave little weight to the report completed by Dr. Foster, stating that his findings were inconsistent with the medical evidence as a whole as well as his own clinical notes.  Tr. 46-47; *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) (treating physician's opinion was not supported by his own findings or the diagnostic data).  Dr. Foster's report, completed on October 30, 2006, was essentially a check-off form.  Tr. 248-252; *see Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value").  Dr. Foster found extreme or marked limitations in almost every subcategory of each domain.  Tr. 248-252.  These findings contradict his clinical notes, which indicate that Plaintiff's impairments were in partial to full remission and his behavior continually improved with medication.  Tr. 163-164, 166, 174, 258-259, 260, 280-282.  Overall, Dr. Foster's notes paint a very different picture from his disabling functional assessment.  Specifically, he noted the following:

♦ January 1, 2005- temper tantrums are less intense and shorter in duration;

♦ December 2, 2005- patient's behavior was appropriate, compliant, and cooperative, with average progress made toward goals;

♦ January 10, 2006- patient's mother reported improved therapeutic benefit from present regimen of medication; less agitation/acting out;

♦ February 10, 2006- improving behavior at school and at home;

♦ October 30, 2006- patient's psychotic features in remission, depression/mania, anxiety/panic/rage, and PTSD in partial to full remission;

♦ November 14, 2006- patient's behavior both at home and school had improved, acting out less intense and shorter in duration; patient not gravely disabled;

♦     January 5, 2007- patient remains improved; acting out incidents recur, but are less intense and shorter in duration.

Tr. 162-174, 257-260.   These findings simply do not support Dr. Foster's functional assessment report.   Moreover, he provided no explanation for the discrepancies.   20 C.F.R. § 416.927(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008)  ("a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement."). The courts finds that Dr. Foster's report is inconsistent with his own statements as well as the evidence as a whole.   As such, the ALJ did not err in giving more weight to the opinions of other physicians, teachers, and school personnel.   Accordingly, the undersigned finds that the ALJ properly weighed and dismissed Dr. Foster's opinion.

**Conclusion:**

Based on the forgoing, the court finds there is substantial evidence to support the ALJ's determinations at all three steps of the sequential analysis.   Accordingly, Plaintiff's complaint should be dismissed with prejudice.

DATED this 18th day of August 2011.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)